[No. 2,333.]

## ABRAHAM POWELL *v.* JOHN MAGUIRE.

CONTRACT TO FORM A PARTNERSHIP—REMEDY FOR BREACH.—Where two persons made an agreement to form a partnership, but such partnership was never launched, and one of the parties proceeded to conduct the enterprise in his own name, at his own cost, and for his own exclusive benefit, excluding the other, and repudiating the partnership agreement: *held*, that an action by the latter to establish his right as a partner, and for an accounting, would not lie—his only remedy in such case being an action at law for breach of contract.

SECRET AGREEMENT OF PARTNERSHIP IN FRANCHISE TO BE PROCURED, NOT ENFORCEABLE.—When Powell and Maguire verbally agreed to procure a franchise in the name of Maguire, and to run a ferry, each party to be equally interested in the franchise and business, and after the procurement of the franchise Maguire refused to transfer one half to Powell, or to recognize any interest in him: *held*, that public policy forbade the enforcement of such secret understanding between the parties.

RIGHT OF FRANCHISEE TO SELECT ASSOCIATES.—When the Legislature grants a franchise to a particular person, his associates and assigns, it delegates to him the right to select the person thereafter to be associated with him in the enterprise.

PUBLIC POLICY AS TO OWNERSHIP OF FRANCHISE.—If several persons, under an agreement of mutual interest, see fit to obtain a franchise from the Legislature in the name of one only, public policy requires that they should be made to rely solely upon his good faith in carrying out the agreement; and if he repudiates the contract on obtaining the franchise, equity will not grant relief.

WHAT AGREEMENTS TO SHARE FRANCHISE ARE ENFORCEABLE—The rule adopted in *Miles* v. *Thorne*, 38 Cal. 335, that an agreement of partnership in a franchise might be enforced by a person who had been let into possession and expended money under an agreement to that effect after the granting of the franchise, is not to be extended beyond the facts of that case.

APPEAL from the District Court of the Seventh Judicial District, Napa County.

This action was originally commenced in the District Court of the Seventh Judicial District for Solano County, but was afterwards transferred to Napa County. On February 1st, 1869, a judgment was rendered in favor of plaintiff, that he should be let into equal participation and enjoyment with the defendant in the franchise and ferry business between Vallejo and Mare Island, and ordering a reference to the Court Commissioner to state an account as to the expenses and receipts of said ferry. The Commissioner reported that the expenses from the time of the granting of the franchise up to May 26th, 1869, amounted to twenty-one thousand three hundred and twenty-six dollars and sixty-eight cents, and the receipts during the same time, to twenty-one thousand one hundred and forty-four dollars and forty-six cents. Upon this report final judgment was rendered on June 18th, 1869, that upon plaintiff's paying to defendant ninety-one dollars and eleven cents, he should be admitted into a full and equal participation and enjoyment with defendant in the ownership of said ferry, its franchise, business, and property. The defendant moved for a new trial, which was overruled, and he then took this appeal from the judgment and order.

*McAllisters & Bergin,* for Appellant.

There never was any partnership between the parties. The plaintiff contributed no time, labor, or money towards the enterprise. It was only after the franchise was granted that he claimed any interest; but not even then did he contribute, or offer to contribute, to the expenses of building boats and putting the ferry in running order. His whole claim was based upon the influence, or pretended influence, exerted by him upon the State Senator from that district in procuring the passage of the bill; but there is nothing to show anything like a partnership between the parties. On his own statements the most he could claim was a half interest in the franchise for " lobby service;" but not even that as a partner. ( *Wheeler* v. *Farmer,* 38 Cal. 203, and cases cited; *Hasketh* v. *Blanchard,* 4 East, 184; *Harding* v. *Foxcraft,* 6 Greenl. 77; *Thorndike* v. *De Wolf,* 6 Pick. 120; Parsons on Part. 548.)

But even admitting, for the sake of the argument, that there was a clear and binding agreement of partnership entered into between Powell and Maguire, that Maguire afterwards repudiated it, and himself proceeded and embarked his means in the proposed business of the partnership, and that Powell never contributed time, attention, means, or labor to the business Maguire thus carried on in disregard of the partnership agreement, is there any principle of law or equity that will make the individual means of Maguire partnership funds, and the increase, partnership profits, or entitle Powell to a division? We know of no such principle or rule. Upon general principles, in the case supposed, Maguire would only be liable for a breach of contract, for which he would be bound to render compensation. What would the compensation be? Clearly not half the profits and stock of the business to which the supposed excluded partner never contributed either. In the ordinary

case of an employment for a definite period of time, if the employer wrongfully dismiss the employé, he is liable for damages; but these are not the full compensation for the unexpired term of service, but merely an indemnity for the damage sustained. (*Clark* v. *Marsiglia*, 1 Den. 318; *Martin* v. *Wilson*, id. 605; *Spencer* v. *Halsted*, id. 608; *Owen* v. *Frink*, 24 Cal. 178; *Shannon* v. *Comstock*, 21 Wend. 459; *Hecker* v. *McCrea*, 24 Wend. 309; *Ashburner* v. *Balchen*, 3 Seld. 264; *Durkee* v. *Mott*, 8 Barb. 428; *Holmes* v. *Davis*, 19 N. Y. 494; *Giles* v. *Morrison*, 50 Barb. 50; *Utter* v. *Chapman*, 38 Cal. 659.)

There were many errors of law committed on the trial. Among others it was error to admit parol-evidence to establish the pretended contract, which, if there ever was any, was void under the Statute of Frauds. It was not to be performed within a year. Besides this, a franchise of this character is embraced within the term " lands, tenements, and hereditaments," as used in the statute, prohibiting any estate, or interest therein, or trust or power relating thereto, to be created, granted, assigned, surrendered, or declared, except in writing. (*Raush* v. *Van Hagan*, 17 Cal. 122; *Wait* v. *Van Allen*, 22 N. Y. 322; *Yturbide* v. *U. S.*, 22 How. 290; *Ray* v. *Wilson*, 13 Ind. 12; 13 Wend. 279; 23 Ill. 370.)

Again, there was error in denying the defendant's motion for nonsuit, and on this among other grounds—the subject matter of the alleged contract was not a legal subject matter of contract. The rights asserted by plaintiff were founded in illegality, in that they were based upon a combination to exercise improper influence on the Legislature in the discharge of its duty; and, also, because the Legislature, in the exercise of its bounty, and in the discharge of its sovereign duty, granted the franchise to the defendant alone, and those whom he might afterwards, by instrument in writing, associate with him in the performance of the duties imposed;

and parol evidence was incompetent to control, qualify, or in any manner vary the terms of the Act itself—the express language of the statute being the only legal means of ascertaining who are the intended recipients of the legislative bounty. In other words, the alleged contract was void as against public policy. (*Mills* v. *Mills*, 36 Barb. 474; *Brown* v. *Brown*, 34 Barb. 333; *Rose* v. *Trax*, 21 Barb. 361; *Harris* v. *Roof*, 10 Barb. 494; *Gill* v. *Williams*, 12 La. An. 219; *Clippenger* v. *Hepbaugh*, 5 W. & Serg. 315; *Hartzfield* v. *Gurden*, 7 Watts, 152; *Bryan* v. *Reynolds*, 5 Wisc. 200; *Powers* v. *Skinner*, 34 Verm. 274; *Wood* v. *Cann*, 6 Dana, 366; *Frost* v. *Inhabitants of Belmont*, 6 Allen, 152; *Magill* v. *Burnett*, 7 J. J. Marsh, 640; *Cunningham* v. *Cunningham*, 18 B. Monroe, 19; *Eddy* v. *Caperton*, 4 R. I. 394; *Fuller* v. *Dame*, 18 Pick. 472; *Gulick* v. *Baily*, 5 Halst. 87; *Pingry* v. *Washburn*, 1 Aiken, 264; *Spence* v. *Harvey*, 22 Cal. 366; *Swan* v. *Chorpenning*, 20 Cal. 182; *Valentine* v. *Stewart*, 15 Cal. 387; *Devlin* v. *Brady*, 32 Barb. 518; *Devlin* v. *Brady*, 36 N. Y. 681; *Davidson* v. *Seymour*, 1 Bosw. 92; *Satterlee* v. *Jones*, 3 Duer, 116; *Bartlett* v. *Coleman*, 4 Pet. 184; *Cappock* v. *Bower*, 4 M. & Wels. 361; *Wilder* v. *Collier*, 7 Maryland, 273; *Krebbin* v. *Haycroft*, 26 Mo. 396; *Martin* v. *Wade*, 37 Cal. 168, and cases cited.)

We are not unaware of the decision of this Court in *Miles* v. *Thorne*, 38 Cal. 335; but in that case the agreement, upon which it was held that Miles was entitled to one half the franchise, was subsequent to the grant, and he actually did reconstruct and repair the subject matter of the franchise under the agreement. All that was said in the opinion as to the validity of the original agreement to procure the franchise was *obiter*, and at best questionable doctrine. According to the test there expressed, there is scarcely a "lobby" arrangement ever made that would not be legal. The true rule, in the language of Justice FIELD is that "all agreements for a share in the result of legislation suggest the use

of sinister and corrupt means for the accomplishment of the end desired, and are therefore void."

*Hartson & Burnell*, and *Thomas P. Stoney*, for Respondent.

A partnership must in all cases exist in advance of its business. Before the partnership business can be launched, there must be an association of the partners for the purpose of embarking in the enterprise. It is hard to conceive of a business which does not require preparations preliminary to its practical operation, and the coöperation of partners in making these preparations is as legitimately within the scope of the partnership as their acts after the principal business has actually been commenced. (*Smith* v. *Tarlton & Finley*, 2 Barb. Ch. 336.) Our position then is, that Powell and Maguire were partners, and that as such they coöperated in all that was done to procure the franchise, and that the franchise was applied for and obtained by them under the express agreement that it was to be used by them as partners in carrying on the proposed ferry business. The evidence shows that they associated themselves together as partners, and as such applied for and obtained the franchise, and we insist that neither of them can exclude the other from a share of the acquisitions of the association, merely because by the terms of the partnership it was to continue for a longer period than the law would recognize as obligatory upon either of them.

Being such partners, the grant of the franchise to " Maguire and his associates " rendered Maguire a trustee, holding for himself and Powell. (*Beaumon* v. *Whitney*, 20 Maine, 413; Collyer on Part. 135; 2 Black. Com. 244; Bouvier Law. Dic. "Purchase.") The franchise being essential to the copartnership business, as soon as it was acquired it vested by operation of law in the partnership. (*Forster* v. *Hale*, 5 Ves. 308; *Leach* v. *Leach*, 18 Pick. 68; *Featherstonhough* v. *Fenwick*, 17 Ves. 298; Dart on Vendors, 434; Collyer on

Part. 181; Tiffany & Bullard on Trust. 189; *Marcy* v. *Herrick,* 18 Penn. St. 128; see, also, *Jenkins* v. *Frink,* 30 Cal. 586.)

Granting that a prospective legislative grant of a franchise such as this was a mere *jus precarium* and not susceptible of being contracted for, yet the franchise when obtained was property, and as such might be the subject of an implied trust. There is nothing in a ferry franchise, as such, which can prevent an assignment of it. If it is inequitable for a partner to exclude his copartner from a share in the franchise, and the law allows him to associate his copartner with him in its enjoyment if he desires, why would not equity compel him to do that justice which the law does not forbid his doing voluntarily? The grant here was not to John Maguire alone, but to him "and his associates" already selected, or to be selected. It was not a personal trust reposed in him, but was made expressly assignable by the use of the words "and assigns."

There is nothing illegal or contrary to public policy in a joint effort of partners to procure for themselves a franchise from the Legislature. There is and can be no illegality in seeking what the Legislature can lawfully grant. If such franchises are given to and may be enjoyed by more than one, why cannot two or more persons unite in praying for them? If all legislation must be the "spontaneous act of the legislative department," it would be equally unlawful for one man, as for several, to petition for and use his influence to obtain a legislative grant for himself. Unless the law, out of tender regard for the weakness of legislators, prohibits all application to them for franchises, there was no impropriety whatever in the combination of Maguire and Powell to obtain theirs from the Legislature. The case of *Miles* v. *Thorne,* 38 Cal. 335, is an authority directly in point and fully supports this position.

By the Court, CROCKETT, J.:

In the year 1866 the Legislature granted to the defendant, "his associates and assigns," a franchise authorizing him or them to establish, and for twenty (20) years to maintain, a steam ferry between Vallejo and Mare Island. Shortly after obtaining the franchise the defendant constructed a steam ferry-boat at his own expense, and in the Spring of 1867 commenced, and has ever since continued, to use her as a ferry-boat between said points. The plaintiff claims that, before the franchise was obtained, he and the defendant had entered into a parol agreement, to the effect that they would jointly, at their mutual expense and for their mutual benefit, establish and operate a steam ferry between said points; and as a part of said agreement, it was further understood and agreed that they would, if practicable, obtain from the Legislature, for their joint and mutual benefit, a franchise authorizing the establishment of said ferry, with the right to operate the same; that it was agreed between them that the franchise should be obtained in the name of the defendant and his associates, and the plaintiff, through his friendly relations with the Senator from that district, was chiefly or wholly instrumental in procuring the franchise to be granted; that immediately after the franchise was obtained, he applied to the defendant to convey or assign to him one half of it, in accordance with their previous agreement; that the defendant at first promised to make the transfer, but evaded doing so from time to time, and finally expressly refused; and commenced, and has ever since continued, to operate the ferry for his own emolument, denying the plaintiff's right to participate therein. The action is brought to establish the plaintiff's right to one half the franchise and ferry, and for an accounting. The answer explicitly denies that there was any understanding or agreement to the effect that the plaintiff was to have any interest whatever in the fran-

chise or ferry, or that he is entitled to participate in any manner therein. At the hearing the Court decided the issues in favor of the plaintiff, and after an accounting was had entered a judgment accordingly. The defendant appeals, as well from the judgment as from an order denying his motion for a new trial.

Upon the plaintiff's own showing the contract was, at most, but an agreement to form a partnership, to take effect when the franchise was obtained; but it clearly appears that the partnership was never launched. On the contrary, the defendant proceeded, shortly after obtaining the franchise, to construct a steam ferry-boat, at his own expense, and for his own exclusive use, and has ever since used her for maintaining the ferry, at his own cost and for his exclusive benefit, denying the plaintiff's right to participate therein, and excluding him from the management and control thereof. Upon these facts, it is obvious that if the plaintiff's rights rested solely on a verbal agreement, to the effect that he and the defendant would establish and maintain the ferry at their joint expense, and for their joint benefit, without reference to the franchise, the plaintiff's only remedy would be an action at law for a breach of contract. He would have no right to participate in the profits of an enterprise to which he had contributed nothing, and could claim no interest in a boat constructed by the defendant, at his own expense, and for his own use, nor in the earnings thereof. In such cases it is well settled that, when the partnership was never launched, and when one of the copartners has proceeded to conduct the enterprise in his own name, at his own cost, and for his own exclusive benefit, excluding the other party therefrom, and repudiating the partnership agreement, the only remedy of the injured party is an action at law for a breach of contract. There would be in such a case, no existing partnership, but only an agreement to form one, which was never consummated by launch-

ing the enterprise.   But it remains to be considered whether the plaintiff stands upon a better footing, because there was coupled with the contract a further agreement that, in furtherance of the enterprise, they would obtain, as they afterward did, the ferry franchise in the name of the defendant, his associates and assigns, for their joint benefit.   Upon this branch of the case the first inquiry is, whether a Court of equity, upon the facts stated in the complaint, will decree the defendant to be a trustee, holding the legal title to a moiety of the franchise for the use of the plaintiff.   In *Miles* v. *Thorne*, 38 Cal. 335, we had occasion to consider a somewhat similar question.   In that case it appeared that Thorne, at his own expense, had constructed and maintained a wagon road for public travel; but the road having gotten out of repair, he desired to obtain from the Legislature a franchise authorizing him to reconstruct the road, and to collect tolls thereon; and with this view he agreed with Miles, that if the latter would prepare a proper bill for that purpose, and present it to a member of the Legislature for introduction into that body, he would convey to Miles one half the franchise, when obtained.   It further appeared that after the franchise was obtained in the name of Thorne, the agreement was renewed, and Miles was placed in possession of one half the road, which he repaired at his own expense— Thorne repairing the other half, and collecting tolls on the whole road.   The action was brought to compel a conveyance of one half the franchise, and for an accounting.   On these facts, we held that the contract was not *contra bonos mores*, and that the plaintiff was entitled to the relief demanded.   But, in the case at bar, the facts are quite different—the plaintiff has not been let into possession, nor expended any time, labor, or money under the franchise, but rests solely on his naked right under the antecedent verbal agreement, to compel the defendant to convey to him a moiety of the franchise.   In my opinion, principles of

public policy forbid that a Court of equity should enforce such a trust, resting wholly on an antecedent agreement, that some one else beside the beneficiary named in the statute was to participate in its benefits, in virtue of a secret understanding between the parties to that effect. Such a practice, if sustained by the Courts, would naturally lead to powerful combinations to procure vicious and corrupt legislation in the name of the least obnoxious of the parties, on an agreement of the confederates to divide the spoils between them. When the Legislature grants a franchise to a particular person, his associates and assigns, it delegates to him the right to select the person thereafter to be associated with him in the enterprise. After obtaining the franchise, if he shall then, by a new contract upon a proper consideration, and in due form, agree to convey a portion of it to another, or if he shall afterwards ratify an antecedent contract otherwise unobjectionable, as in *Miles* v. *Thorne*, and shall let the party into possession, thereby causing him to expend his time, labor, or money in furtherance of the enterprise, as was done in that case, there can be no doubt that a Court of equity would enforce such a contract. But if several persons desiring to obtain a franchise from the Legislature, in which they are all to be mutually interested, see fit to ask it in the name of one only, public policy requires that they should be made to rely solely on his good faith in carrying out the agreement; and if he repudiates the contract on obtaining the franchise a Court of equity will grant no relief. It may be that, if the Legislature had known beforehand who the real parties in interest were, they would not have made the grant; and if the Courts could be appealed to, to enforce such secret antecedent agreements, unsupported by any subsequent acts of the ostensible beneficiary, it is evident that powerful secret combinations would be formed to procure vicious legislation under false pretenses. What might appear to be a harmless or beneficial

enterprise under the control of one person of good character, might prove to be a very dangerous and pernicious scheme in the hands of twenty secret associates of bad character, and to whom the Legislature might have refused to make the grant, if their interest had been disclosed on the face of the bill. I think the rule adopted in *Miles* v. *Thorne* ought not to be extended beyond the facts of that case; and I am, therefore, of opinion that a Court of equity ought not to enforce the verbal agreement set up in the complaint, to the effect that it was agreed before the franchise was obtained that the plaintiff was to be equally interested in it with the defendant. In my opinion the judgment should be reversed, and the cause remanded, with an order to the Court below to dismiss the action.

RHODES, J., concurring:

I concur in the foregoing opinion and judgment, and I am of the opinion that the franchise in question is real estate; that in its transfer it is to be governed by the rules applicable to the transfer of title to other real estate—the provisions of the Statute of Frauds, and the rules in equity, respecting the creation of trusts—and that the evidence in this case fails to show the creation of a trust in favor of the plaintiff within those rules.

Mr. Chief Justice SPRAGUE did not participate in the foregoing decision.