(174 App. Div. 654)

## MANNY v. BURKE.

(Supreme Court, Appellate Division, Third Department. September 13, 1916.)

1. PARTNERSHIP ☞105—AGREEMENT TO FORM—BREACH—REMEDY.

Where a violinist and a theatrical producer made an agreement to form a copartnership in an amusement enterprise to begin September 1st, but the producer violated the agreement before such date, so that the copartnership was never in fact formed, the violinist, for the producer's breach of contract, could bring an action, and need not proceed as for a settlement and an accounting of partnership affairs.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 168; Dec. Dig. ☞105.]

2. CONTRACTS☞332(2)—ACTIONS FOR BREACH—COMPLAINT.

A complaint alleging a valid contract, a readiness to perform on plaintiff's part, a demand upon defendant for performance, the latter's refusal, and the damages resulting therefrom, is sufficient as against demurrer, though there may be difficulty in proving plaintiff's damages.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1621–1635, 1638–1639; Dec. Dig. ☞332(2).]

Woodward and Howard, JJ., dissenting.

Appeal from Special Term, Albany County.

Action by J. Fred Manny against William J. Burke. From a judgment dismissing the complaint upon the pleadings, plaintiff appeals. Judgment reversed, and new trial granted.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Albert B. Wolf, of Troy, for appellant.

O'Brien, Malevinsky & Driscoll and Arthur F. Driscoll, all of New York City (Charles J. Tobin, of Albany, of counsel), for respondent.

JOHN M. KELLOGG, P. J. Upon the trial the defendant had judgment upon the pleadings dismissing the complaint. The complaint alleges an agreement between the defendant, who "is well and favorably known as a producer and promoter of vaudeville entertainment," and the plaintiff who "possesses unique, unusual, and extraordinary ability as a violinist and an actor, and particularly adapted for the portrayal of the character of entertainment that is about to be presented by said Mr. Burke." The agreement recited that the parties "desired to become associated together in the production and presentation of said entertainment to be provided by Mr. Burke in vaudeville, theaters, and other places of amusement," and provided that the defendant is to produce and finance the entertainment and be the general manager thereof, and provided, among other

things, that the plaintiff "is to devote his entire time and best ability to the portrayal of the leading male role or rendition of such other service as Mr. Burke might direct in the entertainment to be provided by said Mr. Burke in vaudeville, theaters, and other places of amusement as Mr. Burke may from time to time determine." The agreement also provided that, after the net proceeds of the entertainment repaid the money advanced by the defendant, the parties were to share equally in the profits and losses of the enterprise. Apparently the plaintiff was to receive no other compensation. The agreement was to continue for three full theatrical seasons from September 1, 1913. At the time performance was contemplated the plaintiff demanded that the defendant fulfill and live up to his agreement, which he refused and still refuses to do, and, the complaint continues, "the plaintiff was at all times herein mentioned ready and willing to fulfill and has fulfilled and performed his part of said agreement and contract; that by reason of defendant's failure to fulfill and live up to his part of said agreement and contract, this plaintiff has been damaged in the sum of $12,000," for which, with interest, he demands judgment.

That action was brought April 8, 1914. The complaint also alleged that, after the signing and delivery of the written agreement, it was agreed between the parties, as a part of the agreement on said day entered into between the parties, that the plaintiff should receive for his compensation under said agreement the sum of $100 or more per week during the continuance of said agreement. The Special Term dismissed the complaint, apparently upon the ground that the agreement to pay the $100 a week was without consideration, and that the plaintiff could not bring an action for wrongful discharge and breach of contract, but must proceed as for a settlement and an accounting of partnership affairs.

[1] There were no partnership affairs to be settled. The parties had made an agreement to form a copartnership to begin September 1st; but the defendant violated the agreement, and therefore the copartnership was never in fact formed. The plaintiff's damages come from the fact that by the defendant's breach the copartnership was never entered upon and the plaintiff lost the profits which would have resulted therefrom. The plaintiff's rights come not from the copartnership business, but from the defendant's breach of the agreement to enter upon and conduct the copartnership business contemplated. The action, therefore, is to recover damages for breach of contract only. On the question of damages the complaint is not very definite; it alleges that the plaintiff has suffered $12,000 damages. Perhaps the defendant could have obtained an order requiring the complaint to be more definite upon that subject. Upon a demurrer to the complaint, the pleading must be liberally construed, and all reasonable intendments are in favor of the plaintiff. Ellsworth v. Agricultural Society, 99 App. Div. 119, 91 N. Y. Supp. 1040.

[2] There may be difficulty in proving the plaintiff's damages, but that is no reason for dismissng his complaint. He has alleged a valid contract, and a readiness to perform on his part, and a demand upon the defendant for performance, and his refusal and the damages resulting from that refusal. The complaint is therefore sufficient as

against a demurrer. If the defendant is well and favorably known as a producer and promoter of his entertainment, as he admits in the contract, evidently the copartnership agreement had value to the plaintiff, and by the breach damages would follow. It is evident the plaintiff is not seeking to recover the $100 a week, as that would be a small part of the damages alleged. He seeks to recover the general damages resulting from the defendant's refusal to perform. The allegation about the $100 per week was evidently thrown in as a safeguard, but has no bearing upon the main question relied upon.

I therefore favor a reversal and a new trial, with costs to the appellant to abide the event.

LYON and COCHRANE, JJ., concur.

WOODWARD, J. (dissenting). The complaint in this action alleges the place of residence of the plaintiff and defendant, and that "on or about the —— day of March, 1913, the defendant entered into a written contract and agreement with the plaintiff, and duly executed by the plaintiff and defendant," which agreement is set out in detail, and which concededly constituted the plaintiff and defendant copartners in a theatrical venture. There can be no reasonable question that the recitals in said contract, together with the expressed consideration, made this a valid contract, binding on the parties. This agreement, made in March, was not to become effective until on or about the 1st of the following September, and was to continue, not for three years, but for "three full theatrical seasons." The complaint, after setting out the contract continues:

"That after the signing and delivery of the above instrument in writing as set forth in paragraph number third of the complaint, it was agreed between the parties hereto as part of the agreement and contract on said day entered into between said parties that the plaintiff should receive, for his compensation under said agreement and contract, the sum of $100 or more per week during the continuance of said agreement and contract; fifth, that thereafter, and on or about the 1st day of September, 1913, at the time the above agreement and contract was to commence, the plaintiff demanded of the defendant that he fulfill and live up to the said agreement and contract entered into by him with the defendant, but the defendant refused and still refuses to fulfill and live up to said agreement and contract, and that the plaintiff was at all times herein mentioned ready and willing to fulfill, and has fulfilled and performed, his part of said agreement and contract; that by reason of the defendant's failure to live up to his part of said agreement and contract this plaintiff has been damaged to the sum of $12,000."

The complaint then demands judgment against the defendant for $12,000, with interest from the 1st day of September, 1913, besides the costs of this action.

The defendant's answer denies the material allegations of the complaint, sets up the statute of frauds as against the fourth paragraph of the complaint, and demands the dismissal of the complaint. Subsequently a motion was made for judgment on the pleadings, and the learned court at Special Term dismissed the complaint, on the ground that it failed to state facts sufficient to constitute a cause of action.

It had seemed to me entirely obvious that the judgment should be supported by this court, upon the general grounds covered by the

opinion of the learned justice presiding at Special Term; but, inasmuch as one of my Brethren disagrees, it seems proper to discuss the merits. The dissenting opinion suggests that the complaint demands relief because of the refusal of the defendant to perform the contract of copartnership, and says:

"If the defendant is well and favorably known as a producer and promoter of his entertainment, as he admits in the contract, evidently the copartnership agreement had value to the plaintiff, and by the breach damages would follow. It is evident the plaintiff is not seeking to recover the $100 a week, as that would be a small part of the damages alleged. He seeks to recover the general damages resulting from defendant's refusal to perform. The allegation about the $100 per week was evidently thrown in as a safeguard, but has no bearing upon the main question relied upon."

Perhaps the best answer to this suggestion is that made by the plaintiff, through his attorney, in the brief now before this court. He says of his complaint that it alleges the making of the written contract—

"and sets forth in the fourth paragraph that, after the signing of the contract in writing it was agreed between the parties to the agreement and contract so entered into between them that the plaintiff should receive the sum of $100 or more per week during the continuance of said agreement and contract, and sets forth in the fifth paragraph that thereafter, and on or about the 1st day of September, 1913, that the plaintiff demanded of the defendant that he fulfill and live up to his agreement and contract entered into by him with the defendant, and that the defendant refused, and still refuses, to fulfill and live up to his agreement and contract, and that the plaintiff was at all times herein mentioned, ready and willing to fulfill and has fulfilled and performed his part of the agreement and contract, and that by reason of the defendant's failure to fulfill and live up to his part of his agreement and contract he has been damaged in the sum of $12,000, being the amount of the damages sustained by him by reason of the defendant's failure to provide employment for the plaintiff as set forth in the agreement and contract, from the time of the agreement or contract was to commence on or about September 1, 1913, and to the time the contract was to continue, which was for three full theatrical seasons at 40 weeks per season, for 3 years, 120 weeks at $100 per week."

That is, the plaintiff himself declares that the gravamen of his action is the loss of employment at $100 per week for 40 weeks per year for a period of 3 years, an aggregate of exactly $12,000, the amount of his alleged damages. He wholly ignores the fact of the contract being one of copartnership, in which he was to share in the profits and losses, and simply seeks to hold the defendant as an employer for a definite term of 40 weeks in each of 3 years. If there was any such verbal agreement as alleged, it was simply an understanding as to the amount which the plaintiff was to draw from the copartnership during its performance; but this would obviously depend upon the question of whether the copartnership was successfully carried on, for his written agreement was to share in the profits and losses, and the amount of his actual compensation could not be determined until it was determined whether there were profits or losses. If the losses exceeded the earnings of the copartnership, it must be obvious that the plaintiff would not be entitled to $100 per week during the entire term.

The plaintiff having himself given us the true construction of his pleadings, and this was obviously what was done before the court at

Special Term it is difficult to understand why this court should be astute to discover a different construction under which the complaint may be sustained. The plaintiff is not here claiming damages for the failure of the defendant to perform his written contract, except as that is supposed to underlie the alleged verbal agreement to pay the plaintiff $100 per week for 120 weeks during a period of 3 years. His theory is that the defendant employed him for a definite period, not that he was employed by the copartnership, with an understanding that he was to draw $100 per week during the performance of the contract, dependent, of course, for its continuance upon the partnership continuing in business and earning a sum sufficient to pay the same. Having entered into a written agreement of partnership, he now seeks to make one member of the firm an employer, and the question of $100 per week is not "evidently thrown in as a safeguard," but as the essential element—the only element—of the damages claimed. That this is the plaintiff's theory, running through the entire complaint, is evidenced by his allegation that he was "ready and willing to fulfill and has fulfilled and performed his part of the agreement," although this action was brought on the 10th day of February, 1914, only about 6 months after the time for the performance to begin on the 3-year contract. The plaintiff makes no claim whatever for damages growing out of the breach of the written contract. His grievance is that the alleged verbal contract, for which there was no consideration, was not carried out; that he was employed at $100 per week for 40 weeks in each year for 3 years. We have a right to accept his own construction of the pleadings, and, as he makes no claim which is good in law, there is no reason for disturbing the judgment.

The judgment appealed from should be affirmed, with costs.

HOWARD, J., concurs.