FRANK C. ARMSTRONG, Respondent, *v.* GEORGE L. RICKARD, Otherwise Known as "TEX" RICKARD, and Others, Appellants.

First Department, February 10, 1922.

**Partnership — receivers — order appointing receivers pendente lite of property of alleged copartnership reversed where no copartnership shown to exist — plaintiff's remedy, if any, is action for damages for breach of oral contract to form copartnership.**

Where upon an application for a receivership of the property of an alleged copartnership between the plaintiff and the individual defendant, the affidavits of the plaintiff and defendant are conflicting, and giving the plaintiff the most favorable interpretation of his claim and assuming the truth of the averments of his affidavits, it is clear that no partnership ever was formed, an order appointing receivers *pendente lite* of the alleged partnership property will be reversed, especially where it appears that the defendant by his own efforts secured an important lease, interested men of means, procured the organization of two corporations, both of which were later made parties defendant by the service of a supplemental summons and a complaint upon the theory that the partnership property

or some part thereof had become vested in them, and which were doing a profitable business as a result of the genius and ability of the individual defendant; that without knowledge of any claim of the plaintiff a large amount of stock in the corporations has been purchased by various individuals who have paid full value therefor; that the corporations are indebted for large sums advanced by the individual defendant and those whom he has interested; that a large amount of money has been expended in improving the premises leased; that the plaintiff had nothing to do with the actual securing of said lease, furnished no part of the moneys required to obtain said lease and to improve the property, has not furnished a dollar to either of the corporations and never had any option or legal title to any of the property of any of the defendants and that all the defendants are financially sound with ample assets within the jurisdiction of our courts to satisfy any claim which may be established by the plaintiff, whose claimed interest is solely by reason of an alleged oral agreement for the formation of a copartnership which was never formed and to which he contributed nothing. The most that plaintiff can ask is that defendant respond in damages for his breach of the oral agreement.

The law is well settled that where a copartnership is not actually established, neither party can sue for a dissolution thereof and an accounting. The remedy of a party claiming to be aggrieved is by an action for damages.

APPEAL by the defendants, George L. Rickard and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of December, 1921, appointing, *pendente lite,* two receivers of the property of an alleged copartnership claimed by plaintiff to have existed between himself and the individual defendant, George L. Rickard, and restraining the defendants, and each of them, from interfering with the control of said property, and directing that all thereof be turned over to said receivers.

*Nathan Burkan,* for the appellants.

*Thomas J. O'Neill,* for the respondent.

MERRELL, J.:

The affidavits presented upon the application were conflicting. The plaintiff, in his affidavit, claims that in the month of May, 1920, he suggested to the defendant Rickard that a lease might be obtained of Madison Square Garden, in the borough of Manhattan, New York city, upon satisfactory terms; and that a profitable enterprise might be established

through the formation of corporations to sublet said property and to lease the same for boxing exhibitions and other sporting events; and, in substance, that the said defendant and the plaintiff entered into an oral agreement that they would obtain a lease of said property from the New York Life Insurance Company, the owner thereof, and would form a copartnership for the exploitation of the same, each of the parties to share equally in the enterprise after payment to said Rickard of ten per cent of the net profits of the business as salary for the management of said business. The plaintiff claims that he at once undertook to interest financial friends in the proposition, and that the said defendant, at his suggestion, obtained from the owner of the property a proposed lease for the period of ten years at an annual net rental of $200,000 besides the payment of taxes, assessments, insurance and water rates, and all expense of repairs and alterations upon the property; that a proposed lease was prepared by the New York Life Insurance Company and delivered to the said individual defendant, who, in turn, left the same with the plaintiff pending the financing of the enterprise and the forming of the necessary corporations. The plaintiff avers that he interested two or three of his friends, men of means, notably Nicholas F. Brady, August Heckscher and J. G. Hopkins, all of whom agreed to join in a syndicate to finance the project; and that all that was required was the execution of a formal lease, the terms of which had not been finally and fully agreed upon. The proposed lease, prepared by the owner of the property, was delivered to the defendant Rickard and by him in turn left with the plaintiff at the latter's office in New York city early in July, 1920. It does not appear from the affidavits that plaintiff was, in fact, finally successful in obtaining the financial backing which he hoped. The owner of the property required, in order to obtain the lease, that the lessee should deposit with it satisfactory securities to the amount of at least $100,000, and should pay in advance upon the execution of the lease, for the first month's rental, taxes and insurance, at least the sum of $20,000 in cash. Plaintiff was unsuccessful in procuring said securities or in raising the cash required to obtain said lease. The plaintiff claims in his affidavit that the owner finally extended the defendant's time to make

the necessary deposit and to take up the lease, which the life insurance company had prepared in the defendant's name, until Monday, July 12, 1920, at ten o'clock in the forenoon, and that the said defendant, in violation of his previous oral agreement with the plaintiff to engage in said enterprise as a joint venture, on the last day when said lease was to be taken, made other arrangements, and, without consulting the plaintiff and to the exclusion of the latter, interested other parties and obtained from the New York Life Insurance Company the lease in question running to said defendant, and has ever since ignored the plaintiff and excluded him from participation in the enterprise.

The defendant denies *in toto* plaintiff's claim as to an agreement to enter into a copartnership or joint venture with reference to obtaining said lease and operating the property under it. The defendant, in his opposing affidavit, states that in June, 1920, he casually met the plaintiff, with whom he had had previous business connections, upon Broad street, in the city of New York, and, upon inquiry by the plaintiff as to what he was doing, he told the plaintiff that he was negotiating for a lease of Madison Square Garden and was endeavoring to obtain financial assistance to carry out the project. Defendant swears in his affidavit that the plaintiff then suggested that, while he was personally hard-up, he had financial friends whom he thought he could interest and raise the required funds to finance the proposition. Defendant says that in reply he told the plaintiff to go ahead and see what he could accomplish; but that plaintiff was never able to obtain definite promises of financial aid from his associates; and, although assuring said defendant that he would succeed, he continued to procrastinate, and never was able to furnish the financial aid which he had promised; that on or about June 28, 1920, the defendant obtained a proposed lease from the New York Life Insurance Company of the property, said lease running to said defendant, for the period of ten years, at an annual rental of $200,000 per year, plus taxes and insurance; that the plaintiff represented to him that he would interest Brady, Heckscher and another man by the name of Marston, of strong financial standing, in the enterprise; and that the said defendant consented to such business arrangement with said

parties, but insisted that if the deal went through, he should have at least a fifty per cent interest in the enterprise. The defendant Rickard swears that the understanding was that, if the plaintiff should be successful in syndicating the enterprise, he was to have a fifteen per cent interest therein for raising the required funds; and that the men who furnished the financial backing should have the remaining thirty-five per cent. The defendant in his affidavit describes the efforts that were made to interest capital, and claims that the plaintiff failed utterly to furnish the required capital or to interest the men whom he had mentioned, and was unsuccessful in obtaining the required securities to the extent of $100,000 or the cash payment of $20,000 for the first month's rent demanded by the insurance company before they would execute the lease in question. The defendant avers that the company finally granted the defendant until Saturday, July 10, 1920, to furnish the required securities and cash and to take over the lease; that on the ninth day of July he called upon the plaintiff and told him of the ultimatum which the company had given him, and then told him that he had finally obtained an extension until ten o'clock of Monday morning, July twelfth, in which to close the matter, and that he, defendant, was not going to wait any longer, and was going to get another party; and that plaintiff then told him to "go ahead." The defendant then claims that on Sunday, July eleventh, he called upon John Ringling, of Ringling Brothers, the well-known circus men, at the Biltmore Hotel, in New York city, and made an arrangement with Ringling whereby the latter and his brother, Charles Ringling, agreed to finance the enterprise and to furnish the required deposit of securities and cash and to furnish sufficient money to make required repairs and alterations upon the building; and that in consideration therefor each of said Ringlings was to receive a one-third interest in the enterprise, the defendant Rickard to have and retain the remaining third interest. On the following Monday morning, July 12, 1920, defendant, having obtained from Ringling Liberty bonds of the par value of $120,000, and furnishing a certified check for $20,000 and his personal check for $666.66, appeared at the office of the New York Life Insurance Company, closed with the owner, and obtained the lease of the property.

Following this, the defendant Rickard procured to be incorporated two corporations, both of which are made parties defendant herein by a supplemental summons and complaint served by the plaintiff. There was formed, first the Madison Square Garden Corporation, to which, on August 11, 1920, the defendant Rickard assigned the lease which he had received from the insurance company. There was subsequently incorporated the Madison Square Garden Sporting Club, Inc., which was capitalized at $400,000, $100,000 being in common stock and $300,000 in the preferred stock of said corporation, which was advertised for sale and 235 shares thereof, of $100 each, were sold to various individuals.

The Ringlings furnished not only the securities required to obtain said lease, but also moneys required to make the substantial improvements and repairs upon Madison Square Garden property. A swimming pool was constructed in the Garden, which, with appurtenances and equipment, represented an expenditure of over $250,000. Altogether there was expended by the defendants in alterations, improvements and repairs to the Madison Square Garden building and for maintenance prior to October 31, 1921, over $440,000. The plaintiff contributed nothing toward such expense, the moneys required therefor having been advanced by the Ringlings and by the defendant Rickard, and as the result of such large expenditures the defendant corporations are indebted to the Ringlings and to the defendant Rickard therefor in approximately $210,000 in addition to the deposit by the said Ringlings with the New York Life Insurance Company of securities of the par value of $120,000 as collateral security on the lease of the property. The proofs show that at the time the defendant Rickard obtained the lease of the property there were other parties negotiating therefor, who stood ready to lease or purchase the property in case of defendant's failure to take the same, and that, except for prompt action on the part of said Rickard, he would have irretrievably lost the opportunity to obtain said lease. Defendant was able, through his arrangement with the Ringling Brothers to form said corporations and to obtain the required financial assistance. By such arrangement the defendant Rickard and the Ringlings were each to have and own a one-third interest in the enterprise. The

proofs show conclusively that the moneys required to obtain the lease and for betterments to the property advanced by the Ringling Brothers were furnished without notice of any claim on the part of the plaintiff, and that the plaintiff was in no manner interested in the enterprise. The plaintiff actually had nothing whatever to do with the final leasing of the property, and furnished no part of the moneys required to obtain said lease or to improve the property, and has not furnished a dollar to either of the corporations which were formed to carry out the enterprise. Plaintiff never had any option or legal title to any of the property of either of the defendants. His claimed interest is solely by reason of an alleged oral agreement for the formation of a copartnership which was never formed, and to which he contributed nothing. It seems to me that, giving to the plaintiff the most favorable interpretation of his claim, and assuming the truth of the averments of his affidavits, at most there was an agreement on the part of the defendant Rickard to engage in a joint venture or copartnership with the plaintiff. As a matter of fact such copartnership was never formed, and the parties never entered into the contemplated joint venture claimed by the plaintiff to have been agreed upon. Under such circumstances it is difficult to understand how the plaintiff can reasonably claim an accounting on the part of the defendant Rickard as a copartner, or how he can claim any interest in the property owned by the corporations subsequently formed and in which he had no interest. The mere allegation on the part of the plaintiff that he was a partner of the defendant, or that the defendant had agreed to form a copartnership and share equally in the venture, does not, of itself, entitle the plaintiff to a receivership or to participate in the affairs of either of the defendant corporations. At most, the allegations of the plaintiff, if true, would entitle him to damages from the defendant for breach of contract. The law is well settled in this State and elsewhere that, where a partner assumes to dissolve the partnership before the end of the term agreed upon, or where, prior to the commencement of the partnership or joint venture, he disaffirms his contract, he is liable in damages to be recovered in an action at law. (*Bagley* v. *Smith*, 10 N. Y. 489; *Hagenaers* v. *Herbst*, 30 App. Div. 547;

*Hyer* v. *Richmond Traction Co.,* 168 U. S. 471; *Manny* v. *Burke,* 174 App. Div. 654.)   As a matter of fact, no copartnership ever existed between these parties.   There was, at most, an oral agreement on the part of the defendant to form a copartnership or to engage in a joint venture.   The whole difficulty with the plaintiff's case, it seems to me, is that the plaintiff has failed utterly to show the actual existence of any copartnership, which must be held to be a prerequisite to the granting of receivership.   High on Receivers (4th ed. § 476) states the rule as follows: " It is important to observe, that, as regards the parties themselves, a court of equity will not lend its extraordinary aid by appointing a receiver unless an actual partnership *inter se* be shown to have existed.   It is, therefore, in all cases, essential to the exercise of the jurisdiction, that there should actually be an existing partnership, either admitted by defendant or established by satisfactory proof, since otherwise the individual property of a defendant might be taken from him by a receiver, and in the end it might appear that plaintiff had no right.   *When, therefore, the existence of a partnership is directly in dispute, and is denied by defendant* (italics are the writer's), in an action for an accounting, the court will not appoint a receiver *in limine,* especially when there is no allegation of defendant's insolvency, or of his inability to respond in the event of a final recovery against him."

While the moving affidavits attempt to show insolvency on the part of the individual defendant, and that there is danger, unless he is restrained, that the alleged partnership assets will be removed from the court's jurisdiction, it appears by a great preponderance of the evidence before us that not only is the individual defendant solvent, but that the defendant corporations and the fruits of the enterprise are ample and are subject to the jurisdiction of our courts and will be readily accessible to satisfy any claim that plaintiff may establish.   In Pomeroy's Equitable Remedies (§ 79) it is said: " In a suit for dissolution and appointment of a receiver, the court should not intervene if the existence of the partnership is denied by the defendant and there is a substantial doubt involving that issue."

The same rule is stated in Alderson on Receivers (§ 446,

edition of 1905), as follows: " It is now settled that upon an application for a receiver there must be shown the due existence of a partnership, either by the admission of the defendant, or by other competent proof, as otherwise the sole property of the defendant might be taken from him, his business broken up, while in the end it might appear that there was no right on the part of the plaintiff even to an accounting. The burden of proof rests, of course, upon the plaintiff. If the fact of the actual existence of the partnership be in doubt, and there is no allegation as to the insolvency of the defendant, or of his inability to respond in case of a recovery against him, it seems that a receiver will be refused until the partnership is clearly established. *If the existence of the partnership is denied, a receiver should be refused until that question is settled.*" (Italics are the writer's.) (*Kirkwood* v. *Smith,* 64 App. Div. 615.)

The law thus is well settled that, where a copartnership is not actually established, neither party can sue for a dissolution thereof and an accounting. The remedy of a party claiming to be aggrieved is by an action for damages. In *Manny* v. *Burke* (*supra*) the court said (at p. 656): " There were no partnership affairs to be settled. The parties had made an agreement to form a copartnership to begin September first, but the defendant violated the agreement and, therefore, the copartnership was never in fact formed. The plaintiff's damages come from the fact that by the defendant's breach the copartnership was never entered upon and the plaintiff lost the profits which would have resulted therefrom. The plaintiff's rights come, not from the copartnership business, but from the defendant's breach of the agreement to enter upon and conduct the copartnership business contemplated. The action, therefore, is to recover damages for breach of contract only."

The facts in the case of *Powell* v. *Maguire* (43 Cal. 11), cited with approval in *Hyer* v. *Richmond Traction Co.* (168 U. S. 471, 484), are quite similar to the facts in the case at bar. The plaintiff there brought action to establish a right to one-half of a certain franchise granted by the Legislature of the State of California to the defendant, and in a steam ferryboat constructed by the defendant solely

at his own expense, and for an accounting. The plaintiff claimed that, before the franchise was obtained, he and the defendant had entered into a parol agreement that they would jointly, at their mutual expense and for their mutual benefit, establish and operate a steam ferry between certain points, and that for that purpose they would, if practicable, obtain from the Legislature for their joint and mutual benefit, a franchise authorizing the establishment of said ferry, with the right to operate the same; that it was agreed between them that such franchise should be obtained in the name of the defendant and his associates, and that the plaintiff, by reason of his personal friendly relations with the Senator from that district, was chiefly or wholly instrumental in procuring the franchise to be granted; that immediately after the franchise was obtained plaintiff applied to the defendant to convey or assign to him a one-half interest therein, in accordance with their previous parol agreement; that the defendant refused to comply with such request, and thereafter continued to operate the ferry for his own emolument, and denied plaintiff any right to participate therein. The answer in that case, as do the opposing affidavits in the case at bar, explicitly denied the existence of any such understanding or agreement as claimed by the plaintiff. At the trial the issues were decided in favor of the plaintiff, but upon appeal the judgment in plaintiff's favor was reversed and the action ordered dismissed. In the course of a well-considered opinion, Mr. Justice CROCKETT, writing for the appellate court, said: " Upon the plaintiff's own showing the contract was, at most, but an agreement to form a partnership, to take effect when the franchise was obtained; but it clearly appears that the partnership was never launched. On the contrary, the defendant proceeded, shortly after obtaining the franchise, to construct a steam ferryboat, at his own expense, and for his own exclusive use, and has ever since used her for maintaining the ferry, at his own cost and for his exclusive benefit, denying the plaintiff's right to participate therein, and excluding him from the management and control thereof. Upon these facts, it is obvious that if the plaintiff's rights rested solely on a verbal agreement, to the effect that he and the defendant would establish and maintain the ferry at their joint expense, and for

their joint benefit, without reference to the franchise, the plaintiff's only remedy would be an action at law for a breach of contract. He would have no right to participate in the profits of an enterprise to which he had contributed nothing, and could claim no interest in a boat constructed by the defendant, at his own expense, and for his own use, nor in the earnings thereof. In such cases it is well settled that, when the partnership was never launched, and when one of the copartners has proceeded to conduct the enterprise in his own name, at his own cost, and for his own exclusive benefit, excluding the other party therefrom, and repudiating the partnership agreement, the only remedy of the injured party is an action at law for a breach of contract. There would be in such a case, no existing partnership, but only an agreement to form one, which was never consummated by launching the enterprise."

The lease in question was secured by the defendant in his own name upon collateral which was furnished by the Ringlings. On August 11, 1920, the lease was assigned to the Madison Square Garden Corporation, one of the defendants herein. Two-thirds of the capital stock of the Madison Square Garden Corporation is owned by the Ringlings, and the remaining third by the defendant. Substantially $300,000 was expended prior to October 31, 1921, in improvements to the property. Of this sum the plaintiff has contributed nothing, and still it is the plaintiff's claim that he is the owner of a half interest in the property of said corporations. The corporations are indebted to the Ringlings and to the defendant for over $200,000 actually advanced, and, besides this, the Ringlings have securities on deposit with the owner of the property of the value of over $125,000. The common stock of the Madison Square Garden Sporting Club, Inc., which was capitalized, as aforesaid, at $400,000, is held by the Ringlings and by the defendant. Of the preferred stock of $300,000, 235 shares thereof have been sold to separate and distinct individuals, who, without notice of any claim by the plaintiff, have paid full value for their stock. Under such circumstances it would seem to be most unjust to permit the plaintiff, in disregard of the rights of these innocent purchasers, both the Ringlings and the stockholders aforesaid, to step in and, upon

so flimsy a claim as is shown by his affidavits, through receivership, to assume the control and direction of the business and to jeopardize valuable property rights. The principle is well recognized that the rights of *bona fide* purchasers for value and without notice are to be protected. (*Deeley* v. *Dwight*, 132 N. Y. 59; *Zartman* v. *First National Bank*, 189 id. 272.) In the state of the record before us I think the appointment of the receivers by the order appealed from was entirely unjustified. Mr. Justice LAUGHLIN, writing for this court, in *Hannevig & Johnsen, Inc.*, v. *Lougheed* (180 App. Div. 584), says: " The courts should be cautious in appointing receivers with respect to copartnership business and particularly where the contract is denied and the business is not definitely defined, which is the case here. (High Receivers [4th ed.], §§ 473, 475, 477, 479, 482, 486, 491 and 501; Alderson Receivers, § 446.) In so far as money has been received or is still to be received in connection with the alleged copartnership business there was no occasion for appointing a receiver, for under the practice applicable to partnerships prescribed in section 1947 of the Code of Civil Procedure, a bond might have been required of the defendants if it appeared that their financial condition was such as to require it for the protection of the plaintiff. (See, also, High Receivers, *supra*, § 478.)"

It appears beyond dispute that the business of the corporations formed by the defendant Rickard and his associates has been extremely profitable. The success of the enterprise has concededly been due to the genius and ability of said defendant as a promoter of sporting events, and it would seem a grave injustice upon the very questionable showing of merits made by the plaintiff to take from the defendant Rickard and the corporations which he has caused to be organized, and which are now carrying on a successful business, the management thereof, and place the same in the hands of untried and inexperienced receivers. As was said in *Cohn* v. *Wahn* (132 App. Div. 849) at page 850: " The success of the business depends largely upon the personal efforts of the defendant and to supersede him with a stranger to the business might result in serious loss to both parties."

It seems to us, under all the circumstances of this case, that the appointment of the receivers herein and the direction

that the property of the defendant corporations be turned over to said receivers was unwarranted by the facts and circumstances presented by the moving affidavits. No copartnership is shown to have existed between the plaintiff and the defendant. At most, there was an oral agreement on the part of the defendant to embark on a joint venture with the plaintiff. That agreement never was consummated, and, according to plaintiff's affidavits, the most favorable interpretation, the most that he can ask, is, that the defendant Rickard respond in damages for his breach of the oral agreement. The plaintiff never had the slightest interest in the affairs of the defendant corporations, and has no right, through the appointment of receivers, to take over their affairs or to manage the same.

The order appealed from should be reversed, with ten dollars costs and disbursements, and plaintiff's motion should be denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.